```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/21/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
HAMATH DIOP,

                                  Plaintiff,

                -against-

THE CITY OF NEW YORK, POLICE OFFICER
DANA MARTILLO, POLICE OFFICER TROY
A. BLAKE, and POLICE OFFICER JOHN DOES
1 AND 2,

                                 Defendants.
-----------------------------------------------------------------X

1:13-cv-825-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

      Defendants the City of New York (the "City") and New York City Police Department Officers Dana Martillo and Troy Blake[1] move for summary judgment on plaintiff Hamath Diop's claims for false arrest and malicious prosecution under 42 U.S.C. § 1983 and state law, and for municipal liability under § 1983. It is undisputed that Mr. Diop was the victim of a harrowing ordeal. He was threatened at knife point by three men not known to him. He was forced to drive his car dangerously to help the men flee from a robbery that they had just committed. He was robbed. Yet after the three robbers fled from his car and Mr. Diop shouted to a police officer for help, Mr. Diop was arrested and prosecuted for traffic violations and possession of the stolen property left behind in his car by the robbers who had victimized him. The Court fully recognizes that Mr. Diop suffered through a chain of misfortune. At the same time, the law appropriately provides qualified immunity for police officers, protecting them from personal liability for the

---

[1] Although Diop also named two "John Doe" defendants in his complaint, he neither identified those defendants nor described their role in the conduct at issue in this case, and the deadline for joinder of additional parties has passed. Accordingly, Diop's claims against John Does 1 and 2 are dismissed. *See Coward v. Town & Village of Harrison*, 665 F.Supp.2d 281, 300 (S.D.N.Y. 2009) ("Where a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the [defendant's] name, . . . the plaintiff simply cannot continue to maintain a suit against the John Doe defendant." (internal quotation marks omitted)).

decisions that they make in situations such as this—difficult, fast-moving, on-the-job decisions about which officers of reasonable competence could disagree. The Court holds that, while the defendants have not established that Mr. Diop's arrest and prosecution were supported by probable cause, the individual defendants are entitled to qualified immunity. The Court further holds that Mr. Diop cannot establish a municipal liability claim against the City. Accordingly, the defendants' summary judgment motion is granted and Mr. Diop's claims are dismissed.

## I.    Background[2]

On November 7, 2011, at approximately 4:00 p.m., Lea Geyser was robbed by three African American males in the Clinton-Washington Avenues G-train Metro Station in Brooklyn, New York. Dkt. No. 12, Declaration of Daniel Passeser Submitted in Support of Defendants' Motion for Summary Judgment ("Passeser Decl."), Ex. A (Joint Stipulation of Undisputed Facts) ("Joint Stip.") ¶¶ 1-3. The perpetrators forcibly took the victim's phone and a purse that contained her credit cards. *Id.* ¶ 5. Diop, an African male, did not commit the robbery. *Id.* ¶¶ 2, 4. Officer Martillo witnessed the robbery, but was too far away to identify any of the perpetrators and lost sight of them when they exited the subway station. *Id.* ¶ 12; Passeser Decl., Ex. C (Affidavit of Dana Martillo) ("Martillo Aff.") ¶ 4.

At the time that the robbery took place, Diop was working as an unlicensed taxi driver and was sitting the driver's seat of a vehicle outside of the subway station looking for passengers. Joint Stip. ¶ 8. The three perpetrators of the robbery fled to Diop's vehicle, opened the rear door, and entered the back seat. *Id.* ¶ 9. One of the perpetrators held a knife to Diop's neck and ordered him to drive, while another stole Diop's phone and money from a compartment between the seats. *Id.* ¶ 10; Dkt. No. 18, Declaration of David T. Roche in Opposition to Plaintiff's Motion for Summary Judgment ("Roche Decl."), Ex. A (Affidavit of Hamath Diop) ("Diop Aff.") ¶ 7. Diop complied

---

[2] The facts at issue in this case are almost entirely undisputed and are derived from the parties' joint stipulation of undisputed facts and the undisputed portions of the affidavits of Diop and Officers Martillo and Blake.

with the order and drove away from the scene. Joint Stip. ¶ 11. Diop subsequently drove through a red light, striking another vehicle in the process, and continued to drive, all the while acting on the demands of the perpetrators. *Id.* ¶¶ 15-16.

Around the same time, Officer Blake was driving north on Clinton Avenue in his marked police vehicle when he heard a screech and crash indicative of a car accident near the intersection of Lafayette and Clinton Avenues. Passeser Decl., Ex. B (Affidavit of Troy Blake) ("Blake Aff.") ¶ 4. Officer Blake drove to that intersection and observed a damaged vehicle. *Id.* ¶ 5. Bystanders pointed Officer Blake in the direction of Diop's vehicle, which Officer Blake pursued. *Id.* ¶¶ 6-7.

After leaving the scene of the accident, Diop turned his vehicle onto a one-way street going in the wrong direction, again acting on the demands of the perpetrators. Joint Stip. ¶ 17. Officer Blake observed Diop's vehicle turn onto a one-way street going in the wrong direction. *Id.* ¶ 20. Upon seeing Officer Blake's marked police vehicle, Diop pulled his vehicle alongside Officer Blake's vehicle, stopped his vehicle, and shouted "Help, they rob me!" Diop Aff. ¶ 9. The three perpetrators subsequently kicked open the rear doors of Diop's vehicle and fled the scene on foot. *Id.* Diop remained in his vehicle and shouted to Officer Blake, "Catch them, they rob me!" *Id.* Officer Blake handcuffed Diop and placed him under arrest for leaving the scene of an accident. *Id.* ¶ 10; Blake Aff. ¶ 9. Diop explained to Officer Blake that he had been robbed and ordered to drive at knife-point and asked Officer Blake to look at a cut on his neck that had been caused by the perpetrator's knife. Diop. Aff. ¶ 10. Officer Blake refused to look at Diop's neck and ordered him to "shut up."[3] *Id.*

---

[3] The parties dispute whether, after placing Diop under arrest, Officer Blake ran the license plate number of Diop's vehicle and determined that the vehicle was neither registered nor insured. *Compare* Blake Aff. ¶ 10, *with* Dkt. No. 19-1, Plaintiff's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Pl. Rule 56.1 Stmt.") ¶ 24. Resolving all factual ambiguities in Diop's favor, however, this purported fact is immaterial to Diop's false arrest claim because it involves information acquired *after* Diop's arrest. *See, e.g., Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) ("The [probable cause] inquiry is limited to whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." (internal quotation marks omitted)). Additionally, this purported fact is immaterial to Diop's malicious prosecution claim because Diop was not charged with driving in an unregistered or uninsured vehicle. *See, e.g., Ruttkamp v. De Los Reyes*, No. 3:10-cv-392 (SRU), 2012 WL 3596064, at *8 (D. Conn. Aug. 20,

Officer Blake then observed a purse in the back seat of Diop's vehicle and, upon searching it, discovered identification and credit cards belonging to Lea Geyser. Joint Stip. ¶¶ 22-23. At that point, Officer Blake suspected that the purse had been stolen and broadcasted over his police radio that he may have apprehended the perpetrator of a robbery. *Id.* ¶ 24. Multiple police officers, including Officer Martillo, responded to the scene. *Id.* ¶ 25. Officer Martillo was accompanied by Ms. Geyser, who positively identified the purse recovered from Diop's vehicle as the purse that was stolen from her. *Id.* ¶ 26. Diop told Officer Martillo that he was the victim of a robbery, not a perpetrator, and that one of the perpetrators had held a knife to his neck, causing a small cut, which he showed her. *Id.* ¶ 27. The parties dispute whether Ms. Geyser identified Diop as one of the perpetrators of the robbery at the scene of his arrest. *Compare* Martillo Aff. ¶ 11 ("Lea Geyser stated to me at the scene of the arrest that the person stopped, Hamath Diop, was one of the perpetrators of the robbery."), *with* Diop Aff. ¶ 12 ("I was not identified by a civilian witness at the arrest location.").[4] One of the robbery perpetrators was later apprehended one block away. Pl. Rule 56.1 Stmt. ¶ 56.

In a November 8, 2011 criminal court complaint signed by Officer Martillo, Diop was charged with failure to obey a traffic control signal, in violation of N.Y. Vehicle and Traffic Law § 1111(d)(1); leaving the scene of an accident without reporting, in violation of N.Y. Vehicle and

---

2012) ("The Second Circuit has made clear that, although the existence of probable cause to arrest for . . . uncharged crimes provides a defense to claims of false arrest, that fact does not . . . preclude claims for malicious prosecution.") (citing *D'Angelo v. Kirschner*, 288 F. App'x 724, 726 (2d Cir. 2008)).

[4] The Court questions whether Diop's affirmation that he was not identified by a witness is based on personal knowledge rather than speculation. *See In re Bridge Const. Services of Florida, Inc.*, No. 12cv3536 (JGK), 2014 WL 3907077, at *6 (S.D.N.Y. Aug. 11, 2014) ("'[P]ersonal knowledge' includes basic, commonsensical inferences, so long as they are grounded in observation or other first-hand personal experience and are not flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." (internal quotation marks omitted)); *Doe v. The National Board of Podiatric Medical Examiners*, No. 03 Civ. 4034(RWS), 2004 WL 912599, at *4 (S.D.N.Y. Apr. 29, 2004) ("[A] court may, in considering a motion for summary judgment, simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible.)." Indeed, Diop's affirmation appears to be based on the dubious assertion that he was never "positioned in such a way that someone would be able to look at [his] face and identify [him]." Diop Aff. ¶ 12. The Court will nonetheless treat the fact at issue as genuinely disputed for purposes of deciding the instant motion, since resolving it in Diop's favor would not change the outcome in this case.

Traffic Law § 600(1)(a); and possession of stolen property in the fourth and fifth degrees, in violation of N.Y. Penal Law §§ 165.45(2) and 165.40.  Passeser Decl., Ex. D (Criminal Compl.).  All charges against Diop were dismissed after the Grand Jury failed to return an indictment.  Joint Stip. ¶ 33.

## II.     Procedural History

Diop commenced this action in February 2013, raising claims for false arrest/imprisonment and malicious prosecution under § 1983 and New York state law, and for municipal liability under § 1983.  In June 2014, Defendants moved for summary judgment, arguing that Diop's arrest and prosecution were supported by probable cause, that Officers Blake and Martillo are entitled to qualified immunity, and that Diop fails to state a municipal liability claim.  *See* Dkt. No. 15 ("Defendants' Mem.").  Defendants also moved to stay discovery, pending resolution of their qualified immunity defenses.  In July 2014, the Court granted the latter motion and stayed discovery against Officers Martillo and Blake.  *See* Dkt. No. 16.

In opposition to Defendants' summary judgment motion, Diop principally argues that the undisputed facts establish that Officers Blake and Martillo lacked even arguable probable cause to arrest and prosecute him, because it was readily apparent that he was the victim of a robbery rather than a perpetrator and that he had been compelled to commit various traffic crimes.  *See* Dkt. No. 17 ("Plaintiff's Mem.").  As to his municipal liability claim, Diop asserts that "the police actions taken [in this case] could only have occurred if the [City's] supervision caused, permitted, condoned, and allowed the improper police practices to occur."  *Id.* at 13.  Diop further asserts that, at the very least, he should have the opportunity to depose Officers Blake and Martillo and their "supervisors and fellow officers" in order to discover evidence relevant to his municipal liability claim.  *Id.* at 15-16.

## III.    Analysis

### A.    Standard of Review

A party is entitled to summary judgment upon a showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether material facts are in dispute, all ambiguities are resolved and all inferences are drawn in favor of the non-moving party. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

**B.      False Arrest**

A § 1983 claim for false arrest is substantially the same as a false arrest claim under New York law. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). To state a claim for false arrest under New York law, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks omitted).

Because the existence of probable cause makes a confinement privileged, it is "a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Weyant*, 101 F.3d at 852 (internal quotation marks and citation omitted). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* The test for probable cause is an objective one and "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007). "[W]hether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the [arresting] officers." *Weyant*, 101 F.3d at 852.

"Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury," as "[t]heir function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989). "It is therefore of no consequence that a more thorough or more probing investigation might have cast doubt upon the situation." *Id.* at 371 (internal quotation marks omitted); *accord Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006) ("[T]he fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." (citation and internal quotation marks omitted)); *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

An arresting officer thus does not have a "duty . . . to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." *Jocks v. Tavernier*, 316 F.3d 128, 135-36 (2d Cir. 2003). At the same time, however, the Second Circuit has recognized that "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause," *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks omitted), and that "a police officer's awareness of the facts supporting a defense can eliminate probable cause," *Jocks*, 316 F.3d at 135; *see also id.* at 136 (holding that an arresting officer may not "deliberately disregard facts known to him which establish justification"); *Panetta*, 460 F.3d at 395 ("[A]n officer may not disregard plainly exculpatory evidence.").

Here, Diop does not dispute that he ran a red light, left the scene of an accident without reporting it, and drove the wrong way down a one-way street. Nor does Diop dispute that Officer Blake either observed him engaging in such conduct or had reasonably trustworthy information

7

suggesting that he had engaged in such conduct. Instead, Diop essentially argues that Officer Blake was or should have been aware of certain facts indicating that Diop's conduct was justified. The Court finds this argument persuasive. It is undisputed that, after Officer Blake determined that Diop had run a red light, left the scene of an accident, and driven the wrong way down a one-way street, Diop drove towards Officer Blake's vehicle, stopped alongside of it, and shouted to Officer Blake for help and that he had been robbed. *See* Diop Aff. ¶ 9. Three individuals then fled from Diop's vehicle while Diop remained in the driver's seat, and Diop showed or attempted to show Officer Blake a cut on his neck that had been caused by the knife of one of the robbery perpetrators. *Id.* at ¶¶ 9-10. These facts should have indicated to Officer Blake that Diop's reckless driving was "necessary as an emergency measure to avoid an imminent . . . private injury" and thus was not criminal under N.Y. Penal Law § 35.05(2).[5] In light of these facts, which Officer Blake was required to consider in determining whether there was probable cause, the Court is unable to conclude as a matter of law that Officer Blake had probable cause to arrest Diop. *See Jocks*, 316 F.3d at 135-36; *see also Levy v. City of New York*, 935 F.Supp.2d 575, 586-87 (E.D.N.Y. 2013) (declining to conclude that the plaintiff's arrest was supported by probable cause where various facts "should have suggested to Defendants that Plaintiff acted out of justifiable self-defense," including the facts that the plaintiff "clearly explained to [the arresting officer] that he had grabbed . . . [a] knife solely to defend his wife from imminent harm," "placed the knife in his pocket before speaking to the police," and "was the person who requested police assistance in the first place by calling 911").

Defendants argue that there was probable cause to arrest Diop for possessing stolen property and robbery, in addition to the traffic offenses discussed above. Resolving all factual ambiguities in Diop's favor, however, the events indicating that Diop possessed stolen property and

---

[5] In his brief, Diop also relies on the fact that his cellphone and money had been stolen from his vehicle. Plaintiff's Mem. at 9. There is no indication, however, that either of the individual defendants were aware of this fact. As a result, it is not relevant to the probable cause inquiry. *See Zellner*, 494 F.3d at 369.

8

committed robbery—Officer Blake's recovery of the robbery victim's purse from Diop's vehicle and the robbery victim's identification of her purse and purported identification of Diop—did not occur until after Diop had already been arrested. *See* Diop Aff. ¶ 10; Blake Aff. ¶ 9; Martillo Aff. ¶ 8.[6] As a result, these events are not relevant to the probable cause inquiry in connection with Diop's arrest. *See Gonzalez*, 728 F.3d at 155; *see also* n.3, *supra* (reaching the same conclusion with respect to Officer Blake's purported determination that Diop was driving in a vehicle that was neither registered nor insured).

### B. Malicious Prosecution

The elements of a malicious prosecution claim under § 1983 are virtually identical to the elements of the same claim under New York law. *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992). A malicious prosecution claim under New York law requires the plaintiff to prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks*, 316 F.3d at 136 (internal quotation marks omitted). In addition to the state law elements of malicious prosecution, "[t]o sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) (internal quotation marks omitted).

As with a false arrest claim, the existence of probable cause is a complete defense to a claim of malicious prosecution. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). In the malicious prosecution context, probable cause is defined as "the knowledge of facts, actual or apparent, strong

---

[6] The undisputed evidence cited above also demonstrates that Officer Blake alone made the decision to arrest Diop prior to Officer Martillo arriving on the scene. For that reason, Diop's false arrest claim against Officer Martillo is dismissed. *See, e.g., Little v. City of New York*, 487 F.Supp.2d 426, 438 (S.D.N.Y. 2007) ("A police officer can only be held liable for a false arrest that occurs outside his presence if he 'had reason to know' that such a false arrest was likely to occur.") (quoting *Escalera v. Lunn*, 361 F.3d 737, 748 n.4 (2d Cir. 2004)).

enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (internal quotation marks omitted). "Unlike an arrest, which only requires probable cause that 'the suspect had committed . . . an offense[,]' a prosecution requires probable cause 'to charge [the suspect] with *each* of the crimes.'" *Kavazanjian v. Rice*, No. 03-CV-1923 (FB)(SMG), 2005 WL 1377946, at *4 (E.D.N.Y. June 6, 2005) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569, 571 (2d Cir. 1996)) (district court's emphasis). "The existence, or lack, of probable cause is measured at a different point in time in a malicious prosecution action than a false arrest action, where the prosecution follows a warrantless arrest." *Jackson v. City of New York*, 939 F.Supp.2d 235, 251 (E.D.N.Y. 2013) (internal quotation marks omitted). "Thus, information discovered by a malicious prosecution defendant after the arrest, but before the commencement of proceedings, is relevant to the determination of probable cause in cases where the prosecution follows a warrantless arrest." *Id.* (internal quotation marks omitted).

Here, it is undisputed that Defendants initiated a criminal proceeding against Diop that terminated in his favor. *See Birthwright v. City of New York*, No. 01 Civ. 3940(CBM), 2005 WL 2179072, at *8 (S.D.N.Y. Sept. 8, 2005) (holding that a criminal proceeding is terminated in favor of the accused where the grand jury declines to indict). Furthermore, the same facts that undermine the existence of probable cause to arrest in this case also undermine the existence of probable cause to prosecute. *See Pizarro v. Kasperzyk*, 596 F.Supp.2d 314, 319 (D. Conn. 2009) ("While probable cause for arrest is distinct from probable cause for prosecution, lack of probable cause to arrest implies lack of probable cause to prosecute.") (citing *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999)). To be sure, there are additional undisputed facts relevant to the probable cause determination. Namely, after Diop was arrested, Officer Blake discovered a purse containing the robbery victim's identification cards in the back seat of Diop's vehicle, and the robbery victim arrived on the scene and positively identified that purse as the purse that had been stolen from her.

10

*See* Joint Stip. ¶¶ 22-23, 26.  These facts, however, were consistent with Diop's claim that he was the victim of a robbery, which, in turn, was at least partially substantiated by the facts known to the individual defendants for the reasons already indicated.[7]  Accordingly, the Court is unable to conclude as a matter of law that there was probable cause to prosecute Diop for failing to obey a traffic control signal, leaving the scene of an accident without reporting it, or possessing stolen property.  Regarding the malice element of malicious prosecution, the Second Circuit has noted that "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment." *Ricciuti*, 124 F.3d at 131.  Defendants thus are not entitled to summary judgment in connection with the basic elements of Diop's false arrest and malicious prosecution claims.[8]

---

[7] Although the parties have not addressed this issue, the Court cannot presume that Officer Martillo, who signed the criminal court complaint against Diop, was aware of the same facts supporting Diop's justification defense as Officer Blake, who informed Officer Martillo only that Diop had "left the scene an of an accident without reporting."  Martillo Aff. ¶ 13.  The Court recognizes that the "collective knowledge doctrine" provides that, "for the purpose of determining whether an arresting officer had probable cause to arrest, where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all." *Savino*, 331 F.3d at 74 (internal quotation marks omitted).  According to the Second Circuit, however, this doctrine "has traditionally been applied to *assist* officers in establishing probable cause" and "*cannot* be used to impute to an officer facts known to some [other] members of the police force which exonerate an arrestee." *Id.* (emphasis in original and internal quotation marks omitted).  Nonetheless, as a practical matter, the individual defendants cannot avoid liability in this context by relying on the fact that Officer Martillo received incomplete information from Officer Blake.  Some courts have held that, under the collective knowledge doctrine, "officers may rely upon information or direction from another officer because the directing officer is presumed to possess probable cause." *Dawkins v. Williams*, 511 F.Supp.2d 248, 276 (N.D.N.Y. 2007) (internal quotation marks omitted).  As a result, where, as here, the validity of the arrest is challenged, "the presumption of probable cause disappears and the government has the burden to establish that the officer or agency imparting the information in fact possessed the probable cause to act." *Id.* at 277 (internal quotation marks omitted); *cf. Whiteley v. Warden*, 401 U.S. 560, 568 (1971) ("[P]olice officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.  Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.").  In any event, the Court is not required to resolve this issue, since, for the reasons indicated below, Officer Martillo is entitled to qualified immunity on Diop's malicious prosecution claim even if she had been aware of the same exculpatory facts as Officer Blake.

[8] The parties have not addressed the fifth element of a malicious prosecution claim under § 1983: whether there was a sufficient post-arraignment restraint on Diop's liberty to implicate his Fourth Amendment Rights. *See Washington*, 373 F.3d at 316.  Because Diop has the burden of proving this element at trial, his failure to offer any evidence would normally warrant granting summary judgment in favor of Defendants. *See, e.g., Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.").  In this case, however, Defendants have not even satisfied their minimal initial burden of "point[ing] to an absence of evidence."  In any event, the Court is not required to resolve this issue in light of its conclusion that the individual defendants are entitled to qualified immunity on Diop's malicious prosecution claims.

11

### C. Qualified Immunity

"[A]n arresting officer is entitled to qualified immunity on claims of false arrest and malicious prosecution if either: (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Carthew v. County of Suffolk*, 709 F.Supp.2d 188, 203 (E.D.N.Y. 2010) (citing *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007); *Posr*, 180 F.3d at 416). The Second Circuit has defined the latter standard as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) (internal quotation marks and citations omitted) (emphasis in original).

In establishing whether arguable probable cause existed, officers are "entitled to draw reasonable inferences from the facts they possess at the time of a seizure based upon their own experiences." *Cerrone*, 246 F.3d at 203. "This forgiving standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The denial of summary judgment is appropriate only where an officer's judgment was "so flawed that no reasonable officer would have made a similar choice." *Id.* In the end, qualified immunity "protects government officials when they make 'reasonable mistakes' about the legality of their actions." *Doninger v. Niehoff*, 642 F.3d 334, 353 (2d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

Here, the Court holds that, as a matter of law, officers of reasonable competence could disagree about whether Diop's arrest and prosecution were supported by probable cause, and thus that Officers Blake and Martillo are entitled to qualified immunity on Diop's false arrest and

malicious prosecution claims. With respect to Diop's false arrest claim, as noted, it is undisputed that Officer Blake either observed or had reasonably trustworthy information suggesting that Diop ran a red light, left the scene of an accident without reporting it, and drove the wrong way down a one-way street. And while the facts discussed above suggested that Diop's reckless driving was justified as an emergency measure to avoid immanent injury, a reasonably competent police officer in Officer Blake's position could have reasonably believed that those facts were not sufficient to establish such a defense to the extent that probable cause was eliminated. *See Levy*, 935 F.Supp.2d at 586-91 (concluding that the plaintiff had raised triable issues of facts as to whether the defendants falsely arrested and maliciously prosecuted him but that the defendants were entitled to qualified immunity because reasonably competent police officers in their position could have reasonably believed that the plaintiff was not acting out of justifiable self-defense). For instance, Officer Blake could have reasonably believed that, upon suddenly coming across his police vehicle, Diop decided that feigning that he had been robbed gave him a better chance of avoiding arrest than flight. Officer Blake also could have reasonably believed that the cut on Diop's neck was caused by something other than a knife, especially since Diop had just been involved in a car accident. Such conclusions, while mistaken, would not have been "so flawed that no reasonable officer would have made a similar choice." *Provost*, 262 F.3d at 160.

With respect to Diop's malicious prosecution claim, for the reasons stated above, a reasonably competent police officer in Officer Martillo's position could have reasonably believed that there was probable cause to prosecute Diop for failing to obey a traffic control signal and leaving the scene of an accident without reporting it, even if Officer Martillo had been aware of the same exculpatory facts as Officer Blake. Additionally, a reasonably competent police officer in Officer Martillo's position could have reasonably believed that there was probable cause to prosecute Diop for possession of stolen property in the fourth and fifth degrees based solely on the robbery victim's identification of the purse recovered from Diop's vehicle as the purse that had been

13

stolen from her. *See Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity." (citations omitted)). Although this evidence was consistent with the facts supporting Diop's justification defense, as noted, a reasonable police officer was not required to believe that such a defense had been established. Additionally, while three individuals fled from Diop's vehicle shortly after Officer Martillo observed three individuals commit a robbery, Officer Martillo could have reasonably believed that Diop or one of the three individuals who fled from his vehicle (whom she could not identify) was merely an accomplice to the robbery and did not participate in the robbery itself.

In support of the above conclusions, the facts evident to the arresting officers in *Jocks*—the case in which the Second Circuit first articulated the principle that "a police officer's awareness of the facts supporting a defense can eliminate probable cause"—were much more probative of a justification defense than the facts at issue here. *See* 316 F.3d at 135-36. There, the evidence offered by the plaintiff indicated that the plaintiff assaulted the defendant police officer only after the defendant had himself pointed a gun at the plaintiff and threatened to kill him. *Id.* at 136. The Second Circuit noted that, on this version of the facts, the defendant lacked probable cause because he actually *knew* that the plaintiff was acting in self-defense and thus that his actions were not criminal. *Id.* While the Court held that an arresting officer may not "deliberately disregard facts known to him which *establish* justification," it also reaffirmed the principle that an officer is not required to "assess the credibility of *unverified* claims of justification before making an arrest." *Id.* at 135-36 (emphases added). In this case, a reasonable police officer in the individual defendants' position could have reasonably believed that Diop's claimed justification defense was "unverified," despite the existence of some corroborating facts. Moreover, there is no indication in the record

that either of the individual defendants were actually aware that Diop had been robbed and compelled to drive at knife-point.[9]

In his brief, Diop contends that, in light of the facts supporting his justification defense, a reasonable police officer was required to conduct a further investigation before determining whether there was probable cause. *See* Plaintiff's Mem. at 9-10. The Court acknowledges that "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Manganiello*, 612 F.3d at 161 (internal quotation marks omitted). Other than "confer[ing] with each other," Plaintiff's Mem. at 9, however, Diop does not explain what sort of additional investigation the individual defendants should have undertaken at the scene of his arrest. The record does not indicate, for instance, that there were any eyewitnesses present who could have corroborated Diop's version of the events. *See Wong v. Yoo*, 649 F.Supp.2d 34, 60 (E.D.N.Y. 2009) (holding that the defendant officers were required to conduct a "further investigation into whether probable cause to arrest plaintiff for assault was negated by the justification of self-defense" based on, *inter alia*, "the presence of eyewitnesses eager to provide statements in plaintiff's favor"). Nor is there any indication that the individual defendants overlooked any other evidence that would have readily corroborated Diop's defense. The Court thus is unable to conclude that the individual defendants' failure to further investigate Diop's claimed justification defense at the scene of his arrest was so unreasonable as to plainly amount to incompetence. *See Provost*, 262 F.3d at 160. Accordingly, the undisputed facts establish that Diop's arrest and prosecution were supported by arguable probable cause, and the individual defendants are entitled to qualified immunity on Diop's false arrest and malicious prosecution claims as a matter of law.

### D. Municipal Liability

---

[9] To be sure, the Court does not read *Jocks* to stand for the proposition that an officer must actually be aware of the existence of a justification defense in order to eliminate probable cause. The Court instead relies on *Jocks* in support of its conclusion that the facts relevant to the probable cause determination in this case were not sufficiently probative of Diop's justification defense to eliminate arguable probable cause.

Under the Supreme Court's decision in *Monell v. Department of Social Services of the City of New York*, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Thus, "[t]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (internal quotation marks omitted).

Diop's municipal liability claim is based entirely on his allegations that (1) "defendants and their supervisors have, in the past, falsely arrested individuals without probable cause, and made, and allowed other fellow police officers to make false entries in official police department records to cover up and hide their wrongful conduct"; and (2) the City "has failed to take steps necessary to discipline, train, supervise or otherwise correct the improper illegal conduct of the individual defendants in this and in similar cases involving misconduct." Dkt. No. 1 (Compl.) ¶¶ 29-30. These allegations are insufficient to state a municipal liability claim against the City. *See, e.g., Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference. Similarly, the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." (citations omitted)), *abrogated on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993); *see also FirstStorm Partners 2 LLC v. Vassel*, No. 10-cv-2356 (KAM)(RER), 2012 WL 1886942, at *7 n.12 (E.D.N.Y. Mar. 8, 2012) ("The defense of failure to state a claim, while commonly raised in motion to dismiss on the pleadings pursuant to Fed. R. Civ.

P 12(b)(6), is properly adjudged by the court on summary judgment."). Furthermore, Diop has not salvaged his municipal liability claim by meaningfully expanding on it in his summary judgment papers or offering any evidence that would support it. *See McAllister v. New York City Police Dept.*, 49 F.Supp.2d 688, 705 (S.D.N.Y. 1999) (collecting cases for the proposition that "[c]onclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent evidence to support such an allegation").

With respect to Diop's argument that he should have the opportunity to conduct additional discovery relevant to this claim, "a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (internal quotation marks omitted). Diop has not and cannot make the above showings, by affidavit or otherwise. The Court stayed discovery in this case against the individual defendants only,[10] *see* Dkt. No. 16, and there is no basis for concluding that those defendants could provide competent testimony with respect to the existence of a municipal policy or custom. Moreover, this case has been pending since February 5, 2013, a Case Management Plan has been in place since May 9, 2014, and the Court's limited discovery stay was not entered until July 22, 2014. Diop thus had ample opportunity to conduct discovery prior to the entry of the limited discovery stay. Under these circumstances, summary judgment in favor of the City on Diop's municipal liability claim is granted, despite the fact that discovery against the individual defendants has recently been stayed.[11]

---

[10] Thus, contrary to his assertion, Diop has not been deprived of an opportunity to depose the individual defendants' "supervisors and fellow officers." Plaintiff's Mem. at 15.

[11] The Court notes that Diop has not argued that the limited discovery stay hindered his ability to establish his false arrest or municipal liability claims, presumably because the facts relevant to those claims are almost entirely undisputed.

## IV. Conclusion

For the foregoing reasons, Defendants' summary judgment motion is granted and Diop's claims are dismissed. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: August 21, 2014  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge